CASE 12—DECEMBER 9.

# Ballard vs. Caperton, et al.

APPEAL FROM MADISON CIRCUIT COURT.

1. In all suits for divorce and alimony the husband is bound to pay the costs of each party, including a reasonable compensation to the attorneys of the wife, no matter what the result of the suit may be, or by what cause it may have been terminated, unless two things are made to appear in the action—(1) that the wife is in fault, and (2) that she has ample estate to pay the costs—there must be a concurrence of the two conditions.. That the wife died before a trial of the action does not avoid this liability of the husband.

2. In such case the attorney's fee, with the other items of cost, may be fixed and ascertained by the court in which the action was brought, even after the death of the wife, or the termination of a suit by a judgment; and upon the husband refusing, without sufficient cause, to obey the order of the chancellor and pay the same, he may be proceeded against by attachment for contempt.

SQUIRE TURNER, for appellant, cited *Rev. Stat., sec.* 37, *p.* 207; 18 *B. Mon.*, 518.

W. H. & J. W. CAPERTON, for appellees, cited 18 *B. Mon.*, 518.

JUDGE WOOD DELIVERED THE OPINION OF THE COURT:

On the 2d day of September, 1858, Mrs. Alissa Ann Ballard filed her petition in equity in the Madison circuit court against her husband, the appellant, in which, upon divers grounds, she prayed for a divorce and alimony.

To this petition the husband filed his answer, in which he controverted all of the material allegations of the petition, and resisted the relief sought.

On the 2d of October, 1858, an order was made by the circuit court upon the defendant to pay to the plaintiff $150, for

her support for a given time *pendente lite*, and that he should pay the costs of the motion for the allowance.

The next order in the record, made on the 7th day of December, afterwards, contains a suggestion of the death of the plaintiff, which had occurred since the last preceding term of the court.

On a subsequent day of the same term the appellees, "W. H. & J. W. Caperton, moved the court for an order on the defendant to pay the costs" of the suit, and a reasonable allowance to the plaintiff's attorneys in the action, which was intended, of course, to be a compensation for their services in prosecuting the suit in behalf of the plaintiff. This motion was resisted by the defendant. The parties being heard, as the record states, " by oral evidence introduced at the bar," it was thereupon " ordered that the defendant pay all of the costs of this proceeding, and that he also pay to W. H. & J. W. Caperton, attorneys for the plaintiff, $50 as a fee to them for prosecuting this action."

At a subsequent term of the court, in June, 1859, the appellees, the Capertons, came into court, and upon the affidavit of J. W. Caperton that he had demanded from the defendant the payment of the $50 and the plaintiff's costs in the action, which, at the December term, he was ordered to pay, and that he had refused to pay the same, moved the court for an attachment against said defendant for his contempt in refusing to comply with the order of the court to pay said costs and the allowance to the attorneys.

The defendant being in court, resisted this motion; but an attachment was awarded against him, returnable *instanter*, to answer for said contempt. The defendant was still in court, and attempted to answer the attachment. But as he presented no answer which, in the opinion of the court, was sufficient, it was " ordered that he stand committed to the jail of the county until said allowance to the Capertons, and the plaintiff's costs of the action, were paid."

Ballard excepted to all of these orders and rulings of the circuit court, and has now appealed to this court for their reversal.

In considering the appeal, two questions naturally present themselves:

1. Whether, in the state of case exhibited by the record in the suit between Ballard and his wife, he was liable to the payment of her costs, both ordinary and extraordinary.

2. If he was liable, could the liability be enforced in the mode adopted by the circuit court in this case?

In examining the first of these questions, it is not necessary that we go behind the Revised Statutes.

As was said by this court in the opinion delivered in the case of *Williams vs. Monroe*, (18 *B. Mon.*, 518,) although there is no common law obligation on the husband to pay the wife's legal advisers for services rendered by them in an action brought by her to obtain a divorce, yet he is, by statute, made responsible for her costs in suits for divorce as well as alimony.

By the thirty-second section of the chapter on costs (*Rev. Stat., p.* 207) it was enacted, that "in suits for alimony and divorce the husband shall pay the costs of each party, unless it shall be made to appear in the cause that the wife is in fault, and has ample estate to pay the same."

In *Williams vs. Monroe* it was said further by this court, "inasmuch as this statutory provision applies as well to suits for alimony as for divorce, and as the husband is liable in the former not only for her ordinary, but also for her extraordinary costs, we think that he is liable under this statute for a reasonable fee to her counsel in a divorce case, as part of the costs of the suit."

This provision of the Revised Statutes applies to all suits for divorce and alimony. None are excepted from its operation.

And in all such cases the husband is bound to pay the costs of each party, (including a reasonable compensation to the attorneys of the wife for their professional services rendered to her in the action,) no matter what the result of the suit may be, or by what cause it may have been terminated, unless two things are made to appear in the action—(1) that the wife is in fault, and (2) that she has ample estate to pay the costs.

There must be a concurrence of the two conditions, in order to exempt the husband from the liability imposed by the statute.

And both conditions must be made to appear in the cause. Although it may be made to appear that the wife is in fault, yet if it be not also made to appear that she has ample estate to pay the costs, the husband is bound to pay them.   Or if she has the estate, and is not in fault, the husband is liable for the costs.

In order to fix this liability upon the husband, it is not required by the statute that the suit shall be brought regularly to a hearing, and be determined by the judgment of the court. That the wife died before a trial does not avoid this liability of the husband, so plainly fixed upon him by the statute.    The fee of the wife's attorneys is allowable as part of the costs, and as the costs are incident to the suit, the attorney's fee, with the other items of costs, may be fixed and ascertained by the court in which the action was brought, even after the death of the plaintiff, or the termination of the suit by a judgment.

As a consequent of this principle, it was decided in *Williams vs. Monroe* that a separate action at law could not be maintained by the attorney against the husband, but that he should apply to the chancery court, in which the suit for a divorce had been brought and decided, for an allowance for his services, as part of the costs of the action.

That Ballard, the appellant, was bound to pay the costs of the action—that incurred by his wife as well as himself—including a reasonable allowance to her attorneys, cannot now be doubted in view of the section of the Revised Statutes, *supra*, and the decision in *Williams vs. Monroe.*

And it seems to us that there can be as little doubt about the answer which must be given to the second question.

This was a proceeding in a court of chancery.   We have seen that the court was authorized by law to make the allowance to the attorneys, and to order the defendant to pay the sum allowed.   The appropriate orders were made in this case. The defendant, (now appellant,) being in open court, refused to comply with the orders, although he could give no sufficient reason for his refusal,

Surely the court, under such circumstances, had the power to enforce obedience to its orders by the summary mode which

was adopted—namely, attachment and imprisonment. This power belongs of necessity to the court, that its judgments and orders may be carried into execution and not remain powerless; and that its dignity and right to respect may be preserved by the prompt punishment of such contumacy as the appellant exhibited in the presence of the court.

The orders of the circuit court *are affirmed.*