JOHN GILES *vs.* COMMONWEALTH.

Suffolk. May 4, 1959. — June 15, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Error, Writ of. Practice, Criminal,* Discharge of defendant, New trial, Assistance of counsel.

This court had power at common law in a proceeding on a writ of error, upon reversing a judgment in a criminal case by reason of error at the trial, to remand the case to the lower court for a new trial instead of discharging the petitioner; that power is not impaired by anything in G. L. (Ter. Ed.) c. 250. [415]

Upon reversing the judgment in a noncapital criminal case in a proceeding on a writ of error by reason of denial to the petitioner of reasonable opportunity to procure counsel, justice did not require that the petitioner be discharged but did require that he be tried properly on the same indictment upon which he had been convicted, and the entry was rightly ordered "Judgment reversed. Verdicts set aside. Case remanded to the Superior Court for further proceedings." [415]

PETITION for a writ of error, filed in the Supreme Judicial Court for the county of Suffolk on September 25, 1958.

The case was heard by *Cutter,* J.

*Wilbur G. Hollingsworth,* for the petitioner.

*John Warren McGarry,* Assistant Attorney General, for the Commonwealth.

WILKINS, C.J. This petition for a writ of error to review convictions for breaking and entering with intent to commit larceny was based upon denial of reasonable opportunity

to procure counsel. The single justice ruled in favor of the petitioner, and ordered the entry: "Judgment reversed. Verdicts set aside. Cases [*sic*] remanded to the Superior Court for further proceedings." The case is here on report of the single justice as to the form of this entry, which is similar to that recently used in *Pugliese v. Commonwealth,* 335 Mass. 471, 476, and *Brown v. Commonwealth,* 335 Mass. 476, 483.

The petitioner contends that under the provisions of G. L. c. 250, § 12,[1] there can be no remand to the Superior Court unless the judgment is reversed by reason of error in the sentence. This contention, which we do not accept, is based upon what is said to be the long standing judicially declared law of this Commonwealth respecting writ of error. We are referred to a number of old cases in all of which there was an error in the sentence.

In *Shepherd v. Commonwealth,* 2 Met. 419 (1841), the prisoner upon conviction of several larcenies was sentenced, as a common and notorious thief, to the house of correction for a term of four years, which was one year longer than was lawful to be served there. The judgment was reversed and the prisoner ordered to be discharged. The opinion of the court, which was by Chief Justice Shaw, in its entirety on this point was: "As there was a judgment rendered in the municipal court, we think we cannot send the case back to that court to render a new judgment; nor can we now render a new judgment, but can simply annul and reverse the erroneous judgment" (page 420). There were cited two English cases. *The King v. Ellis,* 5 B. & C. 395, 400 (1826). *The King v. Bourne,* 7 Ad. & El. 58 (1837).

In the *Ellis* case a judgment was reversed in the Court of King's Bench because the prisoner who had been convicted of petty larceny, the maximum sentence for which was seven years, had been sentenced to fourteen years' transportation. The court distinguished *The King v. Kenworthy,*

---

[1] "If a final judgment is reversed by reason of error in the sentence, such judgment shall be rendered in the case as the court below should have rendered, or it may be remanded for that purpose to said court. . . ."

1 B. & C. 711, because "there no judgment whatever had been passed in the court below." In the *Kenworthy* case the court below had said "It is ordered" that the defendant be transported instead of "It is considered." In the *Bourne* case there was an error in sentence, the prisoners being given transportation instead of capital punishment. In the Court of King's Bench, the judgment was reversed, and the prisoners ordered discharged, the justices again distinguishing the *Kenworthy* case. They intimated (pages 65, 66, 67–68) that had there been no judgment, they could have sent the case back to the court below.

That there is a distinction of substance was made clear in *Campbell* v. *The Queen*, 11 Ad. & El. (N.S.) 799 (1846); *S. C.* 11 Ad. & El. (N.S.) 814 (1847). There the error was not merely in the sentence, but the verdict was bad for uncertainty in not specifying the felony of which the defendants were guilty. Both the Court of Queen's Bench on error from the Court of Quarter sessions and the Exchequer Chamber on error from the Court of Queen's Bench held that it was proper to set aside and annul the verdict and judgment with a direction to the Court of Quarter sessions to award a venire de novo. The argument that the prisoners should be discharged was expressly rejected (pages 840–841).

In the meantime other cases of erroneous sentences, without detailed discussion, followed the *Shepherd* case. *Stevens* v. *Commonwealth*, 4 Met. 360, 371 (1842). *Christian* v. *Commonwealth*, 5 Met. 530, 531 (1843). *Britton* v. *Commonwealth*, 1 Cush. 302 (1848). *Sumner* v. *Commonwealth*, 3 Cush. 521 (1849). In the case last cited the prisoners, who had been convicted of simple larceny of property of a value not exceeding $100, had been sentenced to imprisonment in excess of the permissible maximum of one year. In a per curiam opinion it was said (pages 522–523): "A question is again raised, on the part of the attorney general, whether the court can now pass the sentence, which the court below should have passed. There are obvious difficulties to be encountered on both sides of this question, which it is now hardly necessary to state. It has been de-

cided, in some recent cases, that the court can only reverse and annul the erroneous judgment. It is urged, however, that this decision was not carefully considered; that the authorities cited hardly warrant the decision to its full extent; and the court are requested to reconsider it. This is certainly a very important question, and one which the court have no objection, on a proper occasion, to revise and reconsider. But in the present case, no notice seems to have been given, that this question would be raised, and it has not in effect been argued . . . ."

There was then enacted St. 1851, c. 87, which provided, "Whenever a final judgment in any criminal case shall be reversed by the supreme judicial court, upon a writ of error on account of error in the sentence, the court may render such judgment therein as should have been rendered, or may remand the case for that purpose to the court before which the conviction was had." The substance of this statute is now found in G. L. (Ter. Ed.) c. 250, § 12.

In *Jacquins* v. *Commonwealth*, 9 Cush. 279 (1852), it was held that c. 87 related to writs of error on past, as well as future, judgments. In the opinion of the court, Chief Justice Shaw said, "We have heretofore decided in a similar case, that, upon the reversal of a judgment in a criminal case, the court here had no authority, at common law, to enter a new judgment, such as the court of common pleas should have rendered. *Shepherd* v. *Commonwealth*, 2 Met. 419. This point, whether supported by precedent or not, has become of less importance since St. 1851, c. 87 . . ." (pages 279–280).[1]

Subsequent cases cite our earlier decisions which had said in substance that before St. 1851, c. 87, upon reversal of a judgment for error in sentence, the only judgment which could be given was for the discharge of the prisoner. *Haynes* v. *Commonwealth*, 107 Mass. 194, 198. *Murphy* v. *Commonwealth*, 172 Mass. 264, 277. *Commonwealth* v. *Murphy*, 174

---

[1] For a case relating to a similar statute in England see *Drury* v. *The Queen*, 3 Cox C. C. 252 (1849).

Mass. 369, 372. *Gabis, petitioner,* 240 Mass. 465, 466. *Commonwealth* v. *Novicki,* 324 Mass. 461, 467.

In *Walsh* v. *Commonwealth,* 224 Mass. 39, there had been an illegal sentence. The complaint, which was for taking clams within prohibited bounds, contained no charge of a previous offence. The maximum fine for a first offence was not less than $5 nor more than $10. The fine imposed, however, was $50, the prisoner to stand committed until the fine was paid. After being imprisoned twelve days, he paid the fine. This court reversed the judgment, did not remand the prisoner for further sentence, and awarded him costs. In disposing of a contention of the Commonwealth that R. L. c. 193, § 12 (which is repeated verbatim in G. L. [Ter. Ed.] c. 250, § 12), required that upon reversal the judgment should be the same as the court below should have rendered, it was said (page 41), "The statute was remedial in its nature. But it discloses no legislative purpose to curtail the power previously possessed by the court to discharge the prisoner entirely if justice should require it." In the course of the opinion, the court, citing *Plumbly* v. *Commonwealth,* 2 Met. 413, 418,[1] and the *Shepherd, Jacquins,* and second *Murphy* cases, said, "Before the enactment of any such statute, the only judgment possible on a writ of error in a criminal case was to reverse the judgment already entered and discharge the prisoner." This statement was unnecessary to the decision, and, in our opinion, was too broad in that it was not limited to reversal for errors in sentence. Our first quotation from the *Walsh* case as to absence of legislative purpose to curtail the previous power of the court furnishes background in which to read the statement in *Commonwealth* v. *Phelan,* 271 Mass. 21, 23: "The writ of error provided by G. L. c. 250, §§ 9–13, as amended by St. 1925, c. 279, § 3, and St. 1926, c. 329, § 7, covers the whole subject in the way intended by the Legislature."

Apart from the *Walsh* case, which stands on a different

---

[1] The *Plumbly* case is reported in 2 Met. immediately preceding the *Shepherd* case. There is no discussion of this point or citation of authority.

footing (see *Garabedian* v. *Commonwealth*, 336 Mass. 119), the most recent decision relied upon by the petitioner, in which a prisoner was discharged, is *Sumner* v. *Commonwealth*, 3 Cush. 521, *supra*, one hundred ten years ago. We think that the reconsideration there suggested is long overdue. We believe that the two English cases cited in the *Shepherd* case did not fully support the statement made and went beyond the needs of the decision. As is clear from *Campbell* v. *The Queen*, 11 Ad. & El. (N.S.) 799, *S. C.* 11 Ad. & El. (N.S.) 814, *supra*, the Court of Queen's Bench could send back a case where the verdict was erroneous. We are of opinion that this court at common law had the same power, and that that power has not been impaired by anything in G. L. (Ter. Ed.) c. 250. In the case at bar the single justice held in effect that there had been error in the trial. The effect of the absence of the assistance of counsel is a relatively new ground open upon writ of error. *Allen* v. *Commonwealth*, 324 Mass. 558, 562. *Lindsey* v. *Commonwealth*, 331 Mass. 1. *Jones* v. *Commonwealth*, 331 Mass. 169. *Aronson* v. *Commonwealth*, 331 Mass. 599, 602. *Pugliese* v. *Commonwealth*, 335 Mass. 471, 475. *Brown* v. *Commonwealth*, 335 Mass. 476, 479. While receiving the benefits of this principle, the petitioner challenges the power of the courts to do other than to discharge him from custody. This we shall not do, because we think that we clearly do have the power to remand the case to the trial court. Justice not only does not require that the petitioner be released, but, on the contrary, requires that he be tried, but tried properly, on the same indictment, which was returned in 1945. In this instance, at least, the protection of society is not to be weakened by the development of the civil rights of the individual.

In accordance with the terms of the report the entry will be

> *Judgment reversed.*
> *Verdicts set aside.*
> *Case remanded to the*
>     *Superior Court for*
>     *further proceedings.*